IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| | : | No. 19-307-12 |
| v. | : | |
| | : | |
| JOSE MAZARA-MUNOZ | : | |
| | : | |

**MEMORANDUM**

**KENNEY, J.**                                                                                      **October 31, 2023**

Defendant Jose Mazara-Munoz brings this *pro se* Motion for Sentence Reduction Pursuant to Compassionate Release and Consideration of 2-Point Reduction for Zero-Point Offenders arguing that he is entitled to a reduction of sentence because (i) he has hypertension and diabetes, which makes him more susceptible to adverse outcomes if he were to contract COVID-19; (ii) he is a deportable alien who is not eligible to participate in prison programs that would make him eligible for early release; and (iii) his offense level will be decreased by two levels when the new amendments to the United States Sentencing Guidelines go into effect in November 2023. ECF No. 545. The Government filed a Response in Opposition. ECF No. 557. For the reasons set forth below, the Court will deny Defendant Mazara-Munoz's Motion (ECF No. 545). An appropriate Order will follow.

**I.      BACKGROUND**

Over three occasions in May 2018, Mr. Mazara-Munoz, a citizen of the Dominican Republic who lived in the United States as a permanent resident, delivered a total of fifteen kilograms of fentanyl to a co-conspirator at various locations in New Jersey. *See* PSR ¶ 44. These drug transactions were carried out at the request of co-defendant Manuel Lopez-Avitia—a Mexican national who operated the nationwide fentanyl trafficking conspiracy charged in this case.

1

*Id.* While investigators later seized approximately two of the kilograms, the other thirteen were distributed in this district and elsewhere. ECF No. 557 at 2.

On December 13, 2021, Mr. Mazara-Munoz pled guilty to Counts 1 and 2 of the Superseding Indictment in this case. ECF No. 338. Count 1 charged Mr. Mazara-Munoz with conspiracy to distribute 400 grams or more of a mixture and substance containing detectable amounts of fentanyl in violation of 21 U.S.C. §§ 846, 841(a)(1), (b)(1)(A), and Count 2 charged him with possession with intent to distribute 400 grams or more of a mixture and substance containing a detectable amount of fentanyl and aiding and abetting in violation of 21 U.S.C. § 841(a)(1),(b)(1)(A) and 18 U.S.C. § 2. ECF No. 34.

On January 31, 2023, this Court sentenced Mr. Mazara-Munoz to a term of 36 months of imprisonment, along with other penalties. ECF No. 517. Mr. Mazara-Munoz is serving this sentence at FCI Danbury, with a minimum release date of May 25, 2025. ECF No. 557 at 2. He has served approximately 9 months and has not committed any disciplinary infractions during his time in custody. *Id.*

On September 22, 2023, Mr. Mazara-Munoz filed the instant Motion for Sentence Reduction Pursuant to 18 U.S.C. § 3582(c)(1)(A) arguing that he is entitled to a reduction of sentence because: (1) he has hypertension and diabetes, which makes him more susceptible to adverse outcomes if he were to contract COVID-19; (ii) he is a deportable alien who is not eligible to participate in prison programs that would make him eligible for early release; and (iii) his offense level will be decreased by two levels when the new amendments to the United States Sentencing Guidelines go into effect in November 2023. ECF No. 545. The Government filed a Response in Opposition (ECF No. 557) and provided as an exhibit Mr. Mazara-Munoz's medical

records for the past year from the Bureau of Prisons ("BOP") (ECF No. 558). Accordingly, Mr. Mazara-Munoz's Motion is ripe for consideration.

## II. LEGAL STANDARD

As amended by the First Step Act of 2018, 18 U.S.C. § 3582(c)(1)(A) allows courts to modify a term of imprisonment in any case "if the court finds the sentence reduction is (1) warranted by 'extraordinary and compelling reasons'; (2) 'consistent with applicable policy statements issued by the Sentencing Commission'; and (3) supported by the traditional sentencing factors under 18 U.S.C. § 3553(a), to the extent they are applicable." *United States v. Andrews*, 12 F.4th 255, 258 (3d Cir. 2021). Defendants filing such a motion must have "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or [have experienced] the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier."[1] 18 U.S.C. § 3582(c)(1)(A).

While Congress has not defined "extraordinary and compelling reasons," the United States Sentencing Commission issued a policy statement to describe qualifying circumstances. *See* U.S.S.G § 1B1.13. Although the policy statement predates the First Step Act, the Third Circuit has articulated its persuasiveness in shedding light on what constitutes "extraordinary and compelling." *See Andrews*, 12 F.4th at 260 ("Because Congress reenacted the compassionate-release statute without any alterations to the phrase 'extraordinary and compelling

---

[1] Mr. Mazara-Munoz attached to his Motion an August 19, 2023 email to the warden that requested compassionate release. ECF No. 545 at 7. It is unclear the grounds on which he sought compassionate release and it is unclear what determination was made by the BOP on Mr. Mazara-Munoz's request. However, for purposes of this Motion, this Court will assume that Mr. Mazara-Munoz has satisfied the administrative exhaustion requirement set forth in 18 U.S.C. § 3582(c)(1)(A).

3

reasons,' it was reasonable for the court to conclude that the phrase largely retained the meaning it had under the previous version of the statute." (citations omitted)).

The Sentencing Commission policy statement sets out three specific "extraordinary and compelling reasons" based on the defendant's medical condition, age, or family circumstances. *See* U.S.S.G. § 1B1.13, cmt. n.1(A)-(C). Extraordinary and compelling medical conditions include those in which the defendant is suffering from a terminal illness, "suffering from a serious physical or medical condition," "suffering from serious functional or cognitive impairment," or "experiencing deteriorating physical or mental health because of the aging process." *Id*. § 1B1.13, cmt. n.1(A)(ii). Moreover, the medical condition must be one which "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." *Id.* The Sentencing Commission also includes a "catch-all" provision, which allows a court to modify a sentence for "extraordinary and compelling reason[s] other than, or in combination with, the reasons described in subdivisions (A) through (C)." *Id.* § 1B1.13 cmt n.1(D); *see also United States v. Adeyemi*, 470 F. Supp. 3d 489, 509–510 (E.D. Pa. 2020) (stating that the "catch-all" prevents courts from being "hamstringed because the Sentencing Commission has failed to update the pertinent guidance").

Only if a defendant's circumstances qualify as "extraordinary and compelling," will the court look to the Section 3553(a) factors to determine whether the defendant is entitled to a reduction in sentence. 18 U.S.C. § 3582(c). Those factors are:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed–
>     (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>     (B) to afford adequate deterrence to criminal conduct;

4

> (C) to protect the public from further crimes of the defendant; and
> 
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; … [and]
> 
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct[.]

18 U.S.C. § 3553(a). The defendant bears the burden of proving by a preponderance of the evidence that the requested relief is warranted. *United States v. Jeffries*, No. CR 14-106, 2021 WL 2000555, at *7 (W.D. Pa. May 19, 2021).

### III.   DISCUSSION

As stated above, Mr. Mazara-Munoz brings this Motion for Compassionate Release arguing: (i) he suffers from diabetes and hypertension and is therefore more susceptible to a severe case of COVID-19; (ii) his status as a deportable alien makes him ineligible for prison programs which would make him eligible for early release; and (iii) his offense level will be decreased by two levels when the new amendments to the United States Sentencing Guidelines go into effect in November 2023. ECF No. 545. The Government opposes Mr. Mazara-Munoz's Motion arguing that Mr. Mazara-Munoz has failed to establish extraordinary and compelling circumstances that warrant his release, and, in any event, release is not warranted upon consideration of the 18 U.S.C. § 3553(a) factors. ECF No. 557. The Court will address each of Mr. Mazara-Munoz's arguments in turn. As explained below, the Court agrees with the Government and finds that Mr. Mazara-Munoz has failed to satisfy his burden of proving an "extraordinary and compelling" reason to warrant a reduction in his sentence under 18 U.S.C. § 3582(c)(1)(A) and the 18 U.S.C. § 3553(a) factors otherwise do not justify a reduction in his sentence.

### A. Extraordinary and Compelling Reasons

#### 1. Mr. Mazara-Munoz's Health

Mr. Mazara-Munoz's medical conditions placing him at risk of COVID-19 are not an extraordinary and compelling reason sufficient to grant early release. As stated above, with respect to medical conditions, the Sentencing Guidelines policy statement at U.S.S.G. § 1B1.13 explains that an extraordinary condition[2] exists where a defendant is: "(I) suffering from a serious physical or medical condition, (II) suffering from a serious functional or cognitive impairment, or (III) experiencing deteriorating physical or mental health because of the aging process." U.S.S.G. § 1B1.13, cmt. n.1(A). Moreover, the medical condition must be one which "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." *Id.*

With respect to COVID-19, Third Circuit Court of Appeals has held that "the mere existence of COVID-19 in society and the possibility that it may spread to a particular person alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) (citation omitted). In fact, "with access to the vaccine, an inmate largely faces the same risk from COVID-19 as those who are not incarcerated." *United States v. Estevez-Ulloa*, No. 21-2432, 2022 WL 1165771, at *2 (3d Cir. Apr. 20, 2022) (quoting *United States v. Lemons*, 15 F.4th 747, 751 (6th Cir. 2021)). Thus, given the availability of the vaccine,

---

[2] The Sentencing Guideline policy statement also states that an extraordinary condition exists where: "The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia." U.S.S.G. § 1B1.13, cmt. n.1(A)(i). Here, Mr. Mazara-Munoz has not alleged any terminal illness and therefore, this portion of the policy statement is not applicable to his Motion.

"a prisoner likely will not be able to prove that his personal risk of serious illness from COVID-19 is an extraordinary and compelling reason for release unless he can convincingly show that he is 'unable to receive or benefit from a vaccine' or that he 'remain[s] vulnerable to severe infection, notwithstanding the vaccine.'" *Estevez-Ulloa*, 2022 WL 1165771, at *2 (quoting *United States v. Rucker*, 27 F.4th 560, 563 (7th Cir. 2022)) (further citations omitted). Accordingly, "[c]ourts have routinely denied relief to an inmate who has been vaccinated or denies vaccination." *United States v. Parks*, No. CR 17-296-01, 2023 WL 3060768, at *6 (E.D. Pa. Apr. 21, 2023) (collecting cases).

Mr. Mazara-Munoz argues he is at risk from the new variant of COVID-19 due to his medical conditions. A review of Mr. Mazara-Munoz's medical records for the past year from the BOP reveals that Mr. Mazara-Munoz is an almost 54-year-old male, who suffers from diabetes, retinopathy, hypertension, and hyperlipidemia. At this time, Mr. Mazara-Munoz's conditions appear well-controlled with medication provided by the BOP. Additionally, Mr. Mazara-Munoz is fully ambulatory and engages in all normal activities of daily living ("ADLs"). The records further reveal that, on March 2, 2023, the BOP offered the Moderna COVID-19 vaccine to Mr. Mazara-Munoz, but he declined it. ECF No. 558 at 56.

As the vaccine was offered to Mr. Mazara-Munoz, but it was refused, and there is no explanation in his Motion as to why it was refused, this Court does not find that the threat of the virus presents an extraordinary and compelling reason sufficient to support compassionate release. *See Estevez-Ulloa*, 2022 WL 1165771, at *2 ("Inmates who refuse the vaccine without just cause forgo a powerful protection against illness; they cannot claim that they are at serious risk while declining a potent tool to reduce that very risk.").

### 2. *Deportable Alien Status*

Mr. Mazara-Munoz also argues that a sentence reduction is warranted because he is a deportable alien who cannot benefit from a drug treatment program, specifically the BOP's Residential Drug Abuse Treatment Program ("RDAP"), that may permit earlier release. ECF No. 545 at 3. Pursuant to 18 U.S.C. § 3621, the BOP must "make available appropriate substance abuse treatment for each prisoner the Bureau determines has a treatable condition of substance addiction or abuse." 18 U.S.C. § 3621(b). Under 18 U.S.C. § 3621, eligible prisoners are able to participate in substance abuse programming and treatment available while incarcerated in federal institutions. 18 U.S.C. § 3621(b)(5), (e). As an incentive for prisoners to successfully complete a treatment program, Congress allowed for a potential one-year sentence reduction, at the discretion of prison officials. 18 U.S.C. § 3621(e)(2).

Pursuant to 28 C.F.R. § 550.53, an inmate must meet the following criteria to be admitted to RDAP: (1) the inmate must have a verifiable substance use disorder, (2) the inmate must sign an agreement acknowledging program responsibility; and (3) when beginning the program, the inmate must be able to complete all three components of the RDAP program. 28 C.F.R. § 550.53(b). The three components of the RDAP program are: (1) a unit-based component wherein inmates must complete a course of activities, lasting at least six months, provided by the Psychology Services Department in a treatment unit set apart from the general prison population; (2) follow-up services, if time allows between completion of the unit-based component of the RDAP and transfer to a community-based program; and (3) community treatment services, wherein inmates who have completed the unit-based program and (when appropriate) the follow-up treatment and transferred to a community-based program must complete community treatment service to have successfully completed RDAP and receive incentives. 28 C.F.R. §

550.53(a). "The Warden, on the basis of his or her discretion, may find an inmate ineligible for participation in a community-based program; therefore, the inmate cannot complete RDAP." 28 C.F.R. § 550.53(a)(3). Additionally, 28 C.F.R. § 550.55(b) provides various categories of inmates that are not eligible for early release, including Immigration and Customs Enforcement detainees. 28 C.F.R. § 550.55(b).

At the outset, the Court notes that the Government has represented that Mr. Mazara-Munoz's records reflect that Mr. Mazara-Munoz is not currently subject to an immigration detainer or subject to a deportation order. ECF No. 557 at 11. Accordingly, there appears to be nothing stopping Mr. Mazara-Munoz from applying for RDAP, potentially completing the program, and potentially being released early. But even completion of the program does not guarantee that Mr. Mazara-Munoz would be released early, as the statute authorizing this early release, places the decision within the discretion of the BOP. *See* 18 U.S.C. § 3621(e)(2)(B).

Additionally, Mr. Mazara-Munoz's belief that he would qualify for the program and complete the program is entirely speculative. The most serious impediment to Mr. Mazara-Munoz participating in the program seems to be the fact that Mr. Mazara-Munoz does not appear to have a verifiable substance abuse disorder. A review of Mr. Mazara-Munoz's Presentence Investigation Report provides that Mr. Mazara-Munoz "denied the use or experimentation with any illicit drugs" and "denied that he was under the influence of any drugs while committing the instant offenses." PSR ¶ 148. Moreover, the Presentence Investigation Report provided that while Mr. Mazara-Munoz occasionally drinks wine, he denied any long-term or habitual alcohol consumption, specifically stating, he "never had a problem" with alcohol and "doesn't drink a lot." PSR ¶ 149. Finally, the Presentence Investigation Report indicated that Mr. Mazara-Munoz "denied participation in any inpatient or outpatient detoxication or drug/alcohol treatment

program" and that he "does not believe that he needs such treatment while in custody or on supervised release." PSR ¶ 150. Given that there were no objections to the Presentence Investigation Report and, in particular those paragraphs of the Report describing Mr. Mazara-Munoz's lack of substance use, the Court highly doubts that Mr. Mazara-Munoz would be found to have a verifiable substance use disorder and accordingly, that Mr. Mazara-Munoz would be admitted to RDAP.

Accordingly, the Court finds that Mr. Mazara-Munoz's argument that he is not entitled to early release because he is a deportable alien, who cannot benefit from the RDAP that may permit an earlier release, does not constitute an extraordinary and compelling circumstance warranting a sentence reduction.

        3.      *Forthcoming Amendment to Sentencing Guidelines*

Lastly, Mr. Mazara-Munoz asks this Court to consider Part B, Subpart 1 to Amendment 821 to the Sentencing Guidelines, which will be effective on November 1, 2023, unless disapproved by Congress. ECF No. 545 at 3–4. This amendment provides for a 2-point offense-level reduction for offenders who present zero criminal history points, and who do not fall into one of the nine exclusionary categories described in the new guideline. The Sentencing Commission has indicated that although the amendment will apply retroactively, no person who receives a sentence reduction under the provision may be released earlier than February 1, 2024. *See* United States Sentencing Commission, *Materials Relating to the 2023 Criminal History Amendment*, https://perma.cc/3F3A-3PMP (last visited Oct. 24, 2023).

18 U.S.C. § 3582(c)(2) provides: "in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. 994(o), upon motion of the defendant or the

Director of the Bureau of Prisons, or on its own motion, the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(2). Thus, the statute provides the procedure for a defendant to follow when they have been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission.

Here, as the amendment has not yet become applicable, the Court does not consider it at this moment to be an "extraordinary and compelling" reason justifying compassionate release. At the appropriate time, Mr. Mazara-Munoz may follow the procedure set forth in 18 U.S.C. § 3582(c)(2) to obtain the proper relief based on the retroactive amendment.

In summary, none of the reasons stated in Mr. Mazara-Munoz's Motion constitute "extraordinary and compelling reasons" which warrant a reduction in his sentence.

    **B.**    **Section 3553(a) Factors**

Even if the Court had found that extraordinary and compelling reasons exist, Mr. Mazara-Munoz's Motion would fail based on a consideration of 18 U.S.C. § 3553(a) factors. Mr. Mazara-Munoz has not shown a significant change in factors that led to his sentencing has occurred.

In this case, Mr. Mazara-Munoz delivered a total of fifteen kilograms of fentanyl, an exceedingly dangerous drug, to a co-conspirator over three separate transactions in May 2018. Because of the large quality of fentanyl involved, Mr. Mazara-Munoz's guideline range was 108 to 135 months of imprisonment. However, because of various factors, including Mr. Mazara-Munoz's lack of criminal history, his complete acceptance of responsibility, and his relative culpability in this offense compared to his co-conspirators, this Court departed significantly

11

downward to sentence Mr. Mazara-Munoz to a term of 36 months imprisonment. In imposing this sentence, this Court was mindful of the potential immigration consequences Mr. Mazara-Munoz faced, along with his health at the time, including his lack of substance abuse issues.

Considering the Section 3553(a) factors, the Court does not find that reducing Mr. Mazara-Munoz's sentence would appropriately reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, and afford adequate deterrence. Accordingly, the Court finds that Mr. Mazara-Munoz has failed to meet his burden in demonstrating the Section 3553(a) factors support granting his Motion for Compassionate Release.

### IV. CONCLUSION

For the forgoing reasons, the Court will deny Defendant Jose Mazara-Munoz's Motion for Sentence Reduction Pursuant to Compassionate Release and Consideration of 2-Point Reduction for Zero-Point Offenders (ECF No. 545). An appropriate Order will follow.

BY THE COURT:

/s/ Chad F. Kenney
---
**CHAD F. KENNEY, JUDGE**